## TREADWELL et al. v. PUTMAN.
### No. 5728.

Court of Appeals of the District of Columbia.
Argued April 3, 4, 1933.

Decided May 15, 1933.

C. Dickerman Williams and Bethuel M. Webster, Jr., both of New York City, and Richard H. Wilmer and Douglas L. Hatch, both of Washington, D. C., for appellants.

Leo A. Rover, John W. Fihelly, and John J. Wilson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

The parties occupy the same position here as below, and we shall speak of them as plaintiffs and defendant.

Mrs. Emma Treadwell Thacher, the widow of John Boyd Thacher, formerly lived in Albany, N. Y. She died February 18, 1927, leaving a last will dated in 1925, in which she bequeathed to the United States a valuable collection of books, autographs, manuscripts, and documents, then in the possession of the Library of Congress, where she had deposited it as a loan some fifteen years prior to her death.

The fifth paragraph of her will is as follows: "I give and bequeath to the United States of America all the books which formerly composed that part of the library of my late husband, John Boyd Thacher, which is now contained in the Library of Congress in the city of Washington in the District of Columbia; also, all autograph letters, manuscripts, and documents written or subscribed by the kings and queens or other rulers of England, Germany, Spain, and Italy, including the Popes of Rome, and the rulers of France, including the Napoleonic collection; also, all the books and pamphlets on, or relating to, the subject of the French Revolution and the special collection of autographs, autograph letters, and documents relating to

that subject, all owned by my late husband, John Boyd Thacher, at the time of his death and thereafter acquired and now owned by me and which have not been otherwise disposed of by me at the time of my death or by any other provisions of this my last will and testament or any codicil or codicils thereto; upon condition, however, that said books, pamphlets, autographs, autograph letters, and documents shall be kept together and maintained as an entire collection to be always included with and as a part of the library formerly belonging to the said John Boyd Thacher now in the Library of Congress in the city of Washington in the District of Columbia, known and to be always known and designated as the 'Collection of John Boyd Thacher' and forever held by the United States of America under such name and designation in said Library of Congress in the custody of its librarian; provided further, that said Librarian of Congress shall prepare and publish, in such form as shall be approved of by my executors, a catalogue of said books, pamphlets, autographs, autograph letters, and documents, unless a satisfactory catalogue of the same shall be so prepared and published by me during my lifetime; and provided further, that all possible precautions necessary for the preservation and safety of the same shall be applied and observed at all times by the proper officials and representatives of the Government of the United States of America."

In October, 1930, this replevin suit was instituted in the court below to recover from the defendant, the Librarian of Congress, the collection of books and documents referred to in the above paragraph of the will. The declaration alleges that the collection was at the time of Mrs. Thacher's death and since in the possession of defendant; that defendant had been notified by the executors of the will of its terms; that he assented to the conditions of the legacy, but had not fulfilled them; and that demand for return of the collection had been made and refused.

Paragraph 7 of the will specifically provides for a reversion of the legacy in the event the United States shall not faithfully and fully observe the terms and conditions prescribed by the will, or perform any of the requirements imposed for the care, preservation, and safety of the collection; and paragraph 14 of the will gives the residue of the estate to George Curtis Treadwell, the nephew of the testatrix and one of the executors of the will.

The case was tried to a jury, but at the

conclusion of the evidence, on motion of both parties for a directed verdict, the court instructed the jury in favor of the defendant. Prior to this action, the court had made special findings of fact; among others, that the United States had observed all proper precautions necessary for the preservation of the collection; that the executors had never consented, prior to the 6th day of September, 1929, to the United States retaining as its own the articles bequeathed; that on that date, demand for the return of the articles having been made by the executors and refused by the defendant, the complete title passed to the United States; that prior thereto the defendant neither understood nor believed, nor had reasonable cause to understand or believe, that complete title had passed to the United States. The court concluded from this that the duty with relation to the segregation and cataloguing of the collection did not arise until September, 1929. The court also found that the collection, consisting of five groups, was up to September, 1929, in various parts of the Library building, but that at all times since Mrs. Thacher's death had been known and designated as the John Boyd Thacher collection; that since March, 1930, it had all been kept together and maintained as an entire collection in the Thacher room; that the catalogue published by the Library of the incunabula was a satisfactory compliance with the terms of the will in relation to that subject; and that the catalogue of the other articles had been begun within a reasonable time and copies submitted to the executors, and the whole finally published in 1931.

We find in the record 170 assignments of error, and these we have examined patiently, but we do not need to refer to them each separately, if for no other reason, because counsel have condensed the argument so that it is really only necessary to decide whether there was evidence sufficient to raise an issue of fact for the jury as to compliance with the terms of the will, which, of course, involves deciding whether the court below was correct in taking the case from the jury and entering judgment for the defendant.

We have carefully read all of the evidence and have reached in the main the same conclusion reached by the lower court.

As we have already had occasion to say, the Thacher collection had been turned over by Mrs. Thacher to the Library of Congress many years prior to her death. She visited the Library on a number of occasions and inspected the arrangement of the different groups in the building. She therefore knew how the collection was arranged. Some ten years before her death the Librarian caused to be prepared a catalogue of the incunabula, as to which she expressed her enthusiastic approval. In her will carrying out a purpose she had previously expressed, she gave the collection to the United States on the conditions mentioned in her will. The conditions were that the collection should be maintained as an entirety and be designated as the "Collection of John Boyd Thacher," and that the Librarian should prepare and publish with the approval of the executors a catalogue of the books, pamphlets, autographs, and documents, unless such catalogue had been previously prepared and published during her lifetime, and also that the safety of the collection should be preserved at all times in all proper ways.

In the early part of March, 1927, counsel for the executors sent defendant a copy of Mrs. Thacher's will. To this letter defendant replied that the conditions of the bequest would be met. His attitude in this respect has never changed. The will was probated some two months later, in the early summer of 1927. Between these two dates there was some correspondence between counsel for executors and defendant, the purpose being to determine whether all the papers, autographs, etc., bequeathed in the will were then in the possession of the Library, and, particularly in the later correspondence, whether the Library had possession of articles not bequeathed under the will. In this exchange of communications counsel for the executors wrote to the defendant that, if the Library already had in its possession all the things bequeathed, there would then remain only the formal transfer to be made; and the defendant on his part, acknowledging on behalf of the United States possession of all the property bequeathed, agreed that nothing more remained to be done than the formal transfer. Obviously at this time both parties contemplated some method of transferring complete title; but the formality never was observed. In the meantime the property remained just as it had been for more than fifteen years. About this time counsel for the executors requested the defendant to furnish a list of all the property in the hands of the Library for the purpose of assisting the executors in the preparation of an inventory and appraisal, stating that at a later time it would be necessary to obtain an expert evaluation of the property for the purposes of administration. In midsummer of 1927 the correspondence with re-

lation to the appraisal continued and defendant was notified that the executors and their counsel contemplated a visit to Washington after the inventory and appraisal had been finished. Equally obviously the executors still considered as of this time some further duty on their part to make the bequest effective. The record discloses that, though the inventory was finished and a tentative appraisal made, the promised visit of the executors was postponed until midsummer of 1929, when, to quote from the testimony of counsel for the executors, "the trouble started." The date was August, 1929.

From this brief statement of the facts, we think it is clear that up to the time the breach is alleged to have occurred nothing was done by the executors of Mrs. Thacher to vest complete and absolute title in the United States, and in this view the court below was quite correct in thinking the Librarian of Congress was justified in his belief that, when the administration of the estate was sufficiently advanced, the executors would deliver to the government some sort of instrument formally relinquishing claim of the executors to the property. We are not able to find in the record a statement of the executors' accounts with the probate court in New York, and we are therefore not informed when the estate was settled, but it is perfectly clear that in the latter part of 1927 and near the beginning of 1928 they were in correspondence with the Librarian for the purpose of getting data to include in the report to enable them to close the administration. After that time they continued inactive, so far as the bequest here is concerned, until the visit in the summer of 1929 and the demand in September of that year.

All of the parties agree that under the law title to a specific legacy vests in the legatee upon the death of the testator. All agree likewise that the title which then vests is not complete, as the property is subject to contribution for the testator's debts; that it only becomes complete upon the assent by the executor; and that this assent may be express or implied. Undoubtedly this is the rule. When the property is in the possession of a legatee, acquiescence by the executors in continued possession is ordinarily sufficient to imply assent. Here we have a case in which it is not claimed there was an express assent and in which, as we have seen, there was in the early stages of the administration correspondence between the representative of the legatee on the one hand and the executors on the other—the one located in Washington and the others in New York—looking to the appraisal of the property in the proper settlement of the estate.

These things tended to delay the formal transfer, and equally to delay the operation of the rule of implied transfer. In these circumstances it would be going very far to say that the silence and inaction of the executors during all of this period were sufficient to authorize defendant to proceed to carry out at once the provisions of the will. And we think the record clearly contradicts the idea that the executors themselves so understood, for after the trouble began in the summer of 1929 there were three or four demands by the executors for the delivery of specific articles then in the possession of the Library. The Librarian complied with these demands to the extent of over 250 items. All of this merely tends to prove the uncertainty that surrounded the final carrying out of the terms of Mrs. Thacher's will. While by the terms of the will the United States is required to maintain the collection in the way designated by the testatrix, the will itself sets no specific time for the performance of these conditions, and in such circumstances the universal holding is that the law will imply a reasonable time. Appellant does not deny that this is true, but insists that the reasonable time had expired at the time of the demand. This position, we think, should not be conceded.

The preparation of the catalogue which the will provides should be made was completed in 1931. It took nearly two years in its preparation. The collection has been brought together as directed by the will and marked as directed by the will, and though most of this occurred subsequent to the demand in 1929, and though concededly some of the things required to be done might have been done within a shorter period, yet, in view of the circumstances, we think the Librarian was wholly justified in delaying final and complete compliance with the exact terms of the will until he was assured that no claims from any source would be asserted against the collection in his possession. In this view it is unnecessary, we think, to draw any dead line as to which to say that delivery and vesting of title was complete. Obviously such a time was not, as insisted by appellant, a few months after the probate of the will. If the question were necessary to a decision of the case, it would not be going too far to say that until after the expiration of a year from the probate of the will (the usual period for settlement), or until after the final settlement of the accounts of the executor in the court of

administration, no implied assent on their part to the transfer could be said to arise. And if we should adopt one or the other of these dates as the period when the bequest definitely and finally vested, the time between either and actual compliance with the conditions was entirely reasonable. To reach a different conclusion would be unjustifiable and would have the effect to frustrate the obvious intention of the testatrix.

It is impossible to read the evidence and correspondence between Mrs. Thacher and the defendant and not be struck with evidences of her pride in the collection by her distinguished husband of these historical papers and equally of her desire to maintain in his honor the collection entire, for the benefit of posterity. She could have chosen no better instrumentality for this than the great Library to which she committed the property, and it is unthinkable, if she had been alive, she would ever have complained, much less canceled her gift and abandoned her purpose because the designated arrangement of the collection in the Library was delayed. But,

as we have already said, we are not even prepared to go to the extent of saying there was any delay, or, if there was, that it was the fault of defendant. On a fair consideration of his attitude and actions, we see nothing to criticize and certainly nothing to condemn. He was eager to have the collection of Mrs. Thacher preserved, and received the bequest with the purpose of discharging fully the terms on which she gave it. He has done so, and it would be wholly arbitrary to say that the time required for this, in the circumstances we have narrated, was unreasonable.

Having reached this conclusion, we find it unnecessary to discuss the question as to whether this is in fact a suit against the United States, or another question, discussed elaborately at the bar, whether, on the motion by each side for a directed verdict, defendant is not now foreclosed by the findings of fact of the lower court.

The judgment of the lower court is affirmed.

Affirmed.